No. 19-16806

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHRISTOPHER SLAIGHT, AMIR MASOUDI, AND NOBEL MANDILI,

*Plaintiffs-Appellants,*

v.

TATA CONSULTANCY SERVICES, LTD.,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of California
No. 4:15-cv-01696-YGR
Hon. Yvonne Gonzalez Rogers

## APPELLANT'S REPLY BRIEF

Daniel Low
Daniel Kotchen
Amy M. Roller
KOTCHEN & LOW LLP
1745 Kalorama Rd. NW, Suite 101
Washington, DC 20009
dkotchen@kotchen.com;
dlow@kotchen.com
aroller@kotchen.com

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................iv

ARGUMENT ........................................................................................................1

    I.    The Jury Instructions Prejudicially Misstated the Law, Requiring a New Trial ...........................................................1

        A.    Contrary to Tata's Suggestion, Plaintiffs' Objections Preserved the Instructional Errors for Appeal..............1

            i.    Plaintiffs Preserved the Intent Issue ...................2

            ii.    Plaintiffs Preserved the Citizenship Issue.........10

            iii.    The Opening Brief Correctly Stated the Standard of Review and Did Not Waive the Pointless Formality Exception ...........................................14

        B.    The Erroneous Intent Instruction Requires a New Trial ...............................................................................16

            i.    Tata's Misplaced Attempts to Explain Away the Error ..................................................................16

            ii.    Tata Fails to Show the Error Was Harmless .....19

        C.    The Erroneous Citizenship Instruction Requires a New Trial ...........................................................................25

            i.    Tata's Misplaced Attempts to Explain Away the Error ..................................................................25

            ii.    Tata Fails to Show the Error Was Harmless .....25

    II.    The Desi Emails' Exclusion Was Preserved and Requires a New Trial........................................................27

A.     In Context, the Desi Emails Were Thoroughly Explored and Definitively Ruled Upon, Preserving the Error ...27

B.     The Emails Were Relevant Under Applicable Law.....30

C.     The Emails Were Not Excludable Under Rule 403.....33

      i.     The Ruling Was Not Under Rule 403 and, If It Were, Review Is De Novo ....................................33

      ii.     The Emails' Probative Value Was Not Substantially Outweighed..................................34

D.     Tata Fails to Carry Its Burden to Show Harmlessness. ................................................................................35

      i.     Tata Bears the Burden of Showing Harmlessness Because Shinseki Did Not Overturn This Court's Harmless Error Jurisprudence ...........................35

      ii.     Tata Fails to Sustain Its Burden .......................37

CONCLUSION ...............................................................................39

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Biundo v. Old Equity Life Ins. Co.*, 662 F.2d 1297 (9th Cir. 1981) ........13

*Boyd v. City & County of San Francisco*, 576 F.3d 938 (9th Cir. 2009) . 36

*Buell-Wilson v. Ford Motor Co.*, 160 Cal. App. 4th 1107 (2008) ............. 7

*Caballero v. City of Concord*, 956 F.2d 204 (1992) ...........................20, 24

*Chess v. Dovey*, 790 F.3d 961 (9th Cir. 2015) ..........................................9

*Crowley v. EpiCept Corp.*, 883 F.3d 739 (9th Cir. 2018) ........................36

*Drinkard v. Johnson*, 97 F.3d 751 (5th Cir. 1996) .................................17

*EEOC v. Gen. Tel. Co.*, 885 F.2d 575 (9th Cir. 1989) .............................22

*EEOC v. Inland Marine Indus.*, 729 F.2d 1229 (9th Cir. 1984) ............21

*Engquist v. Or. Dep't of Agric.*, 478 F.3d 985 (9th Cir. 2007) ................33

*Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014) . 37

*Goodman v. Lukens Steel Co.*, 482 U.S. 656 (1987) .........................23, 27

*Hitchcock v. Dugger*, 481 U.S. 393 (1987) .............................................17

*Hunter v. Cty. of Sacramento*, 652 F.3d 1225 (9th Cir. 2011). ..... 1, 10, 25

*Int'l Bhd. of Teamsters v. United States, 431 U.S. 324 (1977)* .... 3, 18, 20, 32, 38

*Jules Jordan Video Inc. v. 144942 Canada Inc.*, 617 F.3d 1146 (9th Cir. 2010) .................................................................................................37

*L.A. Dep't of Water & Power v. Manhart*, 435 U.S. 702 (1978) ..............23

*Ludwig v. Astrue*, 681 F.3d 1047 (2012) ................................................36

*McLeod v. Astrue*, 640 F.3d 881 (9th Cir. 2011) ....................................36

*Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007 (9th Cir. 2007) .. 7, 19

*Norwood v. Vance*, 591 F.3d 1062 (9th Cir. 2010) .............................7, 25

*Obrey v. Johnson*, 400 F.3d 691 (9th Cir. 2005)..........................32, 35, 36

*Rosenbaum v. City & Cty. of S.F.*, 484 F.3d 1142 (9th Cir. 2007)..........15

*Shinseki v. Sanders*, 556 U.S. 396 (2009)...............................35, 36

*Shorter v. Baca*, 895 F.3d 1176 (9th Cir. 2018)........................................7

*Sims v. Georgia*, 389 U.S. 404 (1967) .................................................22

*Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) ...................5, 7

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ......................31

*United States v. Boulware*, 558 F.3d 971 (9th Cir. 2009) ......................30

*United States v. Ciesiolka*, 614 F.3d 347 (7th Cir. 2010).................22, 39

*United States v. Kaplan*, 554 F.2d 958 (9th Cir. 1977)..........................26

*United States v. Lewis*, 53 F.3d 29 (4th Cir. 1995) ...............................26

*United States v. McElmurry*, 776 F.3d 1061 (9th Cir. 2015).................29

*United States v. Palmer*, 3 F.3d 300 (9th Cir. 1993) .............................28

*United States v. Taylor*, 715 F. App'x 740 (9th Cir. 2018).....................27

*United States v. Velarde-Gomez*, 269 F.3d 1023 (9th Cir. 2001) ...........22

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ...............................................................................................20

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .......................30, 31

**Statutes**

42 U.S.C. §2000e-2..................................................................................18

**Other Authorities**

SEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (2017).........................18

**Rules**

Federal Rule of Appellate Procedure 28.................................................15

Federal Rule of Civil Procedure 51 .....................................1, 2, 4, 8, 9, 13

Federal Rule of Evidence 103 ...........................................................29, 30

Federal Rule of Evidence 401 ....................................................31, 34, 37

Federal Rule of Evidence 403 ........................................31, 33, 34, 35, 37

Gonzalez-Rogers Civ. Pre-Trial Standing Order .....................................2

Ninth Circuit Rule 28-2.5.......................................................... 14, 15

**Treatises**

BALLENTINE'S LAW DICTIONARY (3d ed. 2010)...........................................6

MCCORMICK ON EVIDENCE (8th ed.) ................................................32, 34

NEW OXFORD AMERICAN DICTIONARY (3d ed.) ..........................................6

# ARGUMENT

## I. THE JURY INSTRUCTIONS PREJUDICIALLY MISSTATED THE LAW, REQUIRING A NEW TRIAL

The instructional errors were appropriately preserved, misstated the law, and Tata's has not demonstrated harmlessness.

### A. Contrary to Tata's Suggestion, Plaintiffs' Objections Preserved the Instructional Errors for Appeal

Tata attempts to parse the record in a hyper-technical effort to explain away each time Plaintiffs raised the instructional issues below (AB-49-67), which this Court should reject.

To preserve an instructional error for appeal, a party must generally object. Fed.R.Civ.P. 51(d)(1)(A). Rule 51(c) sets forth the two requirements for objecting effectively. First, an objection must be "on the record, stating distinctly the matter objected to and the grounds for the objection." Fed.R.Civ.P. 51(c)(1). Informal objections suffice. *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1230 (9th Cir. 2011). Second, the objection should be made when provided "an opportunity to object on the record and out of the jury's hearing before the instructions and arguments are delivered." Fed.R.Civ.P. 51(b)(2), (c)(2). This can be accomplished before or during trial. *Hunter*, 652 F.3d at 1232

("plaintiffs' pre-trial objection … suffic[ed] under Rule 51"). The objection requirement is excused if the court definitively rejects a requested instruction. Fed.R.Civ.P. 51(d)(1)(B). This occurs when "the court has made it clear that the request has been considered and rejected on the merits." *Id.*, advisory committee note to 2003 amendment.

### i. Plaintiffs Preserved the Intent Issue

Tata claims that Plaintiffs' objections to the intent instruction (OB-33) were defective and that they waived or forfeited their right to appeal (AB-50-59). Those mistaken contentions are based on a distorted reading of the record, which Plaintiffs must now correct.

By standing order, the district court requires written objections to and arguments in support of each proposed jury instruction, arranged in a special format that enables comparative analysis. Gonzalez-Rogers Civ. Pre-Trial Standing Order, R. 3(f)(i)(B)-(C).[1]

---

[1] *Available at* https://cand.uscourts.gov/wp-content/uploads/judges/gonzalez-rogers-ygr/YGR-Civil-Pretrial-Order_with-jury-questionnaire-appendix.pdf.

On October 7, 2018, the parties submitted their Joint Proposed Jury Instructions, in which Plaintiffs requested instructions that used the term "pattern or practice of discrimination" in lieu of "intentional discrimination"—merging the concepts into one. *E.g.*, ER-597, 617, 624. The point of this tack was that, because intent is inferred from the pattern or practice under *Teamster*s, the concepts could be combined. *See* OB-34-36 (tracing jurisprudence). Plaintiffs also proposed a series of instructions providing an overview of the evidence from which a pattern or practice can be "inferred" (ER-617), including statistics (ER-620). In support, they argued that "[i]ntent can be inferred from statistical evidence alone." ER-620.

Subsequently, at the November 9 charging conference the intent issue was discussed extensively and Plaintiffs made their point several times, for example:

> Your honor, we just think intent is a pattern and practice.
> And that's why we are in the pattern or practice framework.
> And to call it out separately is something [that is] different,
> we think is inappropriate.

ER-127:840-41.[2] The court was unmoved and definitively rejected

Plaintiffs' proposal. *E.g.*, ER-127:840-41 ("I'm not satisfied that

[Plaintiffs'] instruction does it" and "[intent is] distinct from whether or

not there is some pattern or practice… an independent element"); ER-

131:855.

At that point, no further objection was required to preserve the

issue for appeal. Fed.R.Civ.P. 51(d)(1)(B). Plaintiffs, however, did not

leave the issue there.

The parties were then asked to submit proposed definitions of

intent. ER-127:842. On November 16, Plaintiffs proposed: "[f]or our

purposes, discrimination is intentional if it is done as a regular pattern

rather than an unusual practice." ER-580. Later that day, they again

discussed linking intent to statistics (ER-193-96) and the district court

expressed its disagreement with Plaintiffs' position (ER-194:1583). In

response, Plaintiffs' counsel reiterated that:

---

[2] *See also, e.g.*, ER-130:853-54 ("Judge, we think the pattern or practice
means—that's what constitutes intentional. So it almost seems like
they're including another [element] … [p]attern or practice means
intent"); ER-131:855 ("Right. And the statistics show [intent]"); ER-
127:840.

> [A] statistical disparity is evidence of intent. That is what the *Hazelwood* case stands for. So that's—that is well-established law that if there's a statistical disparity, if you look at standard deviations of more than two is typically evidence of intent. And here, if we are writing that out of the jury instructions, that—our view, would basically do away with a lot of pattern or practice cases because you start with the disparities.

ER-194:1583. Plaintiffs' position could not have been clearer.

Defense counsel then stated Tata's belief that this presented the same issue raised by Plaintiffs' October 7 proposal and previously rejected. ER-194:1583 ("this is the continuation of last week's attempt to collapse one element into the other [that] I had thought your honor concluded was not appropriate"). After requesting both sides' authority, the district court moved on. ER-194:1583.

***The Issue Was Preserved***. Throughout the foregoing, Plaintiffs preserved the issue for appeal by objecting as required by Rule 51(c). And no "real possibility [existed] that the district court simply overlooked the instruction and would have been willing to give one had the omission been brought to its attention." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1073 (9th Cir. 2020) (en banc). Plaintiffs distinctly stated their concerns, but the trial court disagreed. Accordingly, the issue was preserved.

***The Issue Was Not Forfeited***. Despite this, Tata mistakenly claims that the instructional error was forfeited because Plaintiffs' proposed instructions did not use the word "inference" to describe the relationship between the pattern or practice and intent, "nor did they argue this position below." AB-51-54. Not so. Plaintiffs' proposed instructions were to the same effect. *Supra*, p.3-4. And Plaintiffs repeatedly made their intent argument orally and in writing. *E.g.*, ER-620 ("[i]ntent can be inferred from statistical evidence alone"); *supra*, p.3-5 & n.2.

Although Plaintiffs did not always use the word "infer," there is no difference between an inference and a situation in which one fact proves another. *See, e.g.*, *Inferred*, BALLENTINE'S LAW DICTIONARY (3d ed. 2010) ("Concluded from a known fact."); *Infer*, NEW OXFORD AMERICAN DICTIONARY (3d ed.) ("deduce or conclude (information) from evidence and reasoning"). Even if "infer" were the preferred terminology, objections and proposed instructions need to bring an issue to the court's attention, they need not be perfect to preserve an issue for appeal. *See, e.g.*, *Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007,

6

1017 (9th Cir. 2007) (proposed instructions);[3] *Shorter v. Baca*, 895 F.3d 1176, 1183 (9th Cir. 2018) (objections); *Norwood v. Vance*, 591 F.3d 1062, 1066 (9th Cir. 2010) (objections). The district court was not required "to divine" Plaintiffs' position, so no forfeiture occurred. *Skidmore*, 952 F.3d at 1073.

***The Issue Was Not Waived***. Tata makes much of a November 26 conference to claim that Plaintiffs subsequently waived the objections by "expressly approv[ing]" the instruction. AB-54-59. This acontextual reading of the record is flatly wrong.

Prior to the November 26 conference, the district court distributed revised draft instructions, which incorporated none of Plaintiffs' proposals or objections discussed above. ER-213-214.

Early in the conference, defense counsel began commenting on the draft by repeating its rejected objections and proposals, to which the district court replied: "It's—look, all of this is preserved. You have it in

---

[3] This perfection principle, which Tata repeatedly invokes, is a state-law preservation rule that is contrary to decisions of the Ninth Circuit and cannot reconciled with its jurisprudence. *See Buell-Wilson v. Ford Motor Co.*, 160 Cal. App. 4th 1107, 1176 (2008) (explaining irreconcilable split).

your other submissions. So merely repeating yourself, I don't understand what the point is." ER-202:1623. Later, the district court prefaced further discussion by stating that:

> [T]he record will reflect that I rejected numerous requests of the plaintiffs for additional instructions on the elements. I think—and some of the defense, but there were more from the plaintiffs …. But all of those requests from both plaintiffs and defendants, which I have denied, are in the record.

ER-213:1718. Accordingly, Plaintiffs directed their comments towards new issues relevant to finalizing the instructions, rather than reiterating substantive arguments that had already been rejected. *See* AB-56-59 (quoting record and noting that "Plaintiffs offered proofreading edits").

Tata reads this exchange as effecting waiver, a contention that is mistaken for three reasons. First, the district court prefaced the discussion by clarifying that prior requests were denied and in the record (ER-213:1718), relieving Plaintiffs of the obligation (if any existed) to repeat their objections again (Fed.R.Civ.P. 51(d)(1)(B)). Second, there was no need to renew the objections at all. As the district court's comments make clear that this was not (as Tata claims) the parties' "opportunity to object on the record," Fed.R.Civ.P. 51(b)(2), the

8

preceding written submissions and conferences were (*supra*, pp.3, 7-8). Third, Tata's claim that Plaintiffs "disclaimed any substantive objections" on November 26 (AB-59) is utterly incredible. In reality, Tata seeks to fault the Plaintiffs for fighting, losing, and then moving on, instead of repeating themselves *ad nauseam*. That is not the sort of behavior that Rule 51 requires.

***Pointless Formality***. Even if Plaintiffs had failed to comply with Rule 51 (which they did not), the issue was preserved for *de novo* review because continuing to press the issue would have been a pointless formality. *Chess v. Dovey*, 790 F.3d 961, 970-71 (9th Cir. 2015). Here, the record shows extensive debate and the court unquestionably understood Plaintiffs' point but disagreed. *Supra*, pp.3-5. Tata's arguments to the contrary (AB-65-66) are based on a distorted reading of the proposed instructions, the record, and the law, thoroughly refuted above. *Supra*, pp.3-7 & n.3 (correctly interpreting proposed instructions, explaining objections, and noting that alternative proposals need not be perfect to preserve issue). Accordingly, review is de novo.

### ii. Plaintiffs Preserved the Citizenship Issue

Tata also claims that Plaintiffs' objections to the citizenship instruction (OB-42-43) were insufficient or abandoned (AB-59-63). The record demonstrates otherwise.

On October 7, 2018, when Tata proposed an instruction that distinguished between citizenship and national origin, Plaintiffs objected that the instruction was confusing because it "materially misstates the law because the factual basis for citizenship discrimination and national origin discrimination can substantially overlap." ER-612. Because of this, jurors would be confused about how to apply the law. ER-612-13.

This objection (made at the time permitted by the judge, *see* Pre-trial Standing Order, *supra*), sufficed to preserve the issue for appeal. *See Hunter*, 652 F.3d at 1232.

But Plaintiffs did not leave it there. At the October 12 Pretrial Conference, Plaintiffs raised the issue while discussing one of Tata's motions to exclude: "there is considerable overlap between citizenship discrimination and national origin discrimination." ER-19.

At the November 9 charging conference, Plaintiffs renewed their pretrial objection, noting the overlap between citizenship and national origin ("they are using [the] visas to have … one national origin to come over") and explaining that Tata was "try[ing] to confuse the jury" by saying that "just because there are visas at issue here, it becomes a citizenship case." ER-122:822; *see also* ER-121:818-122:819. The district court had clearly read Plaintiffs' written objection and understood the overlap. ER-123:823 (noting that "the [] visas demonstrate circumstantially that everybody comes from India"). The court then expressed its desire to "move on" and rely on the briefing. ER-123:824.

The morning of November 16, Tata submitted a revised proposal to the same effect (SER-377[4]), which, having been in trial all morning, Plaintiffs had little time to review (ER-194:1581 (noting this)). Accordingly, they had not submitted an alternative proposal during the intervening time and, when asked, Plaintiffs stated as much, in an

---

[4] "National origin differs from citizenship. Plaintiffs do not claim discrimination based on citizenship status."

innocuous exchange. ER-193:1579-80; *see also* AB-61 (emphasizing this exchange). Plaintiffs then reiterated their prior objections:

> ***We think the instruction itself was designed to confuse the jury,*** and we don't think that there's a reason for there to be an instruction about what's not at issue here.

ER-193:1580; *see also* AB-61 (ignoring bolded portion). The juror confusion argument referred to those from October 7 and November 9, *supra*. Ultimately, the district court adopted Tata's proposed instruction. ER-214:1722; ER-15.

***The Error Was Preserved***. Although Plaintiffs opposed giving a citizenship instruction (because defining national origin sufficed), they explained the basis for the objection—that the concepts overlap. By highlighting the nature of the issue, this preserved the objection for appeal. *Shorter*, 895 F.3d at 1183.

***The Argument Was Not Abandoned***. And Plaintiffs did not abandon the issue. First, Plaintiffs did not abandon the issue on November 9 or 16. AB-60-62. They consistently objected on the grounds that citizenship and national origin overlap, rendering Tata's instruction likely to confuse jurors. *Supra*, pp.10-12. Even if that debate were "not [always] a model of clarity … taken in its context the

objection here fulfills the purpose of the rule." *Biundo v. Old Equity Life Ins. Co.*, 662 F.2d 1297, 1300 (9th Cir. 1981).

Second, no alternative proposal was required from Plaintiffs because they objected to a given instruction. AB-62. A party can appeal "an error in an instruction actually given, if that party properly objected" without proposing an alternative. Fed.R.Civ.P. 51(d)(1)(A). And Plaintiffs did propose an alternative—relying on the definition of national origin, which would have avoided the false citizenship/national origin dichotomy that resulted. ER-612.

Third, Plaintiffs did not abandon the issue on November 26. AB-62-63. The district court adopted Tata's proposed instruction (ER-214:1722; SER-377) and explained the parties' objections were preserved for the record (*supra*, pp.7-8). At that point, Plaintiffs directed their comments towards new issues instead of repeating old arguments that had been resolved against them. Rule 51 requires a party to object when given the opportunity "before the instructions and arguments are delivered," but nothing in Rule 51 requires parties to continually renew an unsuccessful objection. Fed.R.Civ.P. 51(b)(2), (c)(2).

13

***Further Objection Would Be a Pointless Formality***. And, as the foregoing shows, the parties repeatedly debated the citizenship discrimination issue throughout the trial and the district court understood Plaintiffs' position. *Supra*, pp.10-12; *see also Chess*, 790 F.3d at 970-71. Tata's arguments to the contrary (AB-66) are based on a distorted reading of the record and the law, thoroughly refuted above. *Supra*, pp.10-13 (correctly interpreting proposed instructions, objections, and preservation standard). Because continuing to object would have been a pointless formality, review is de novo.

### iii. The Opening Brief Correctly Stated the Standard of Review and Did Not Waive the Pointless Formality Exception

Tata's Answering Brief suggests that Plaintiffs failed to comply with Circuit Rule 28-2.5 and, correspondingly, waived the pointless formality issues discussed above. AB-64-67. Not so.

Rule 28-2.5 requires the "appellant [to] state where in the record on appeal *the issue* was raised and ruled on and identify the applicable standard of review." (emphasis added). Plaintiffs complied—the Opening Brief noted Plaintiffs' preservation efforts and the applicable

14

standard of review. *E.g.*, OB-33 (intent); OB-42 (citizenship); OB-29-30 (de novo review and harmless error).

The pointless formality exception is not a separate "issue" under Rule 28-2.5 or FRAP 28(a)(5) (opening brief must identify "issues presented for review"). Moreover, this Court will consider an issue not raised in the opening brief's statement of issues for review "when the issue 'is raised in the appellee's brief.'" *Rosenbaum v. City & Cty. of S.F.*, 484 F.3d 1142, 1150 n.3 (9th Cir. 2007) (citation omitted). Here, Tata's Answering Brief argued at length about the supposed insufficiency of Plaintiffs' preservation efforts (AB-49-67) and re-formulated the issues presented, adding waiver to each (AB-13).

Plaintiffs could not have anticipated Tata's long and tortured argument, particularly because the parties discussed the instructions over hundreds of pages and Plaintiffs objected until they were blue in the face.[5] Accordingly, no waiver occurred.

---

[5] *E.g.*, ER-588-648 (Proposed Instructions); ER-579-82 (Supplemental Proposed Instructions); ER-583-587 (Sample Instructions); ER-111-37 (Nov. 9 conference); ER-193-98 (Nov. 16 conference); ER-201-207, 211-22 (Nov. 26 conference); ER-254-55 (Nov. 27 conference).

### B. The Erroneous Intent Instruction Requires a New Trial

The district court's intent instruction was both erroneous and prejudicial. Tata's arguments to the contrary are misplaced.

#### i. *Tata's Misplaced Attempts to Explain Away the Error*

Tata tries to explain away the instructional errors by misconstruing Plaintiffs' argument and evading the effect of the instruction as a whole. AB-67-73.

First, Tata claims that the interrelation of the first and second elements was clear because they were elements of the same claim and connected by a preposition. AB-68-70. Those observations are meaningless. The fact that the "pattern or practice" had to be one "of intentional discrimination" in no way conveyed that statistics can prove intent. ER-15. They remained two separate elements, only one of which was singled out as provable by statistics. ER-15.

Second, Tata claims that the jury *was* instructed that it could infer intent from statistical evidence and that Plaintiffs omitted that instruction from the Opening Brief—a surprising claim. AB-68. In actuality, Tata is referring to the instruction that "'you may consider

direct and/or circumstantial evidence to prove each element of the claim.'" AB-70. This does not cure the error because the instruction still misstated the law. OB-34-38; *Hunter*, 652 F.3d at 1233 (reversing where instruction was "consistent" with but "far from a complete statement of our caselaw").

And directing jurors that statistics alone can suffice to prove one element necessarily implied that they did not suffice to prove the others, in line with the legal maxim *expressio unius est exclusio alterius*. *See Hitchcock v. Dugger*, 481 U.S. 393, 398-99 (1987).[6] And so, jurors were left to believe that statistics alone would *not* suffice to prove intent.

Third, Tata claims that "Plaintiffs were not entitled to an instruction erroneously implying that intentional discrimination is always … inferred" from a pattern or practice. AB-at 72. However, that is not the error of which Plaintiffs complain—the district court's

---

[6] The Opening Brief errantly cited the dissent from *Drinkard v. Johnson*, 97 F.3d 751 (5th Cir. 1996) without noting the dissenting nature of the opinion. But the cited text analyzed the Supreme Court's holding in *Hitchcock*, so the opinion remains persuasive authority. *Drinkard*, 97 F.3d at 773.

liability instruction failed to convey that intent *can* be inferred from statistics or statistics alone—a core facet of pattern or practice cases—and, in fact, implied it could not. OB-34-38. Moreover, equating the two is not problematic, as Tata contends, because intent is subsumed within the pattern-or-practice standard. It is difficult (or impossible) to imagine a situation in which a company could *unintentionally* maintain a "standard operating procedure" of discrimination—that's exactly why the Supreme Court created the *Teamsters* framework. OB-23-26, 34-36 (explaining framework's doctrinal origin and purpose).

Furthermore, Tata errantly attempts to cast the Seventh Circuit's Pattern Jury Instruction—titled "Pattern or Practice"—as a dispaprate impapct instruction. AB-50 n.6. But that manual contains another section title "Disparate Impact," which explains that "[t]he Committee did not include a disparate impact instruction because there are no jury trials under Title VII for disparate impact." §3.08. Nor is its omission of the word "intent" in error, as the Ninth Circuit's disparate treatment instruction (OB-37), the text of Title VII (42 U.S.C. §2000e-2(a)), and case law (OB-34-36) make clear.

Accordingly, the given instruction was in error.

### ii. Tata Fails to Show the Error Was Harmless

Tata fails to carry its burden to show that the verdict would have been the same absent error.

*First*, Tata argues that no extra element was added. AB-73-74. But the instruction effectively did by failing to clarify that one element satisfies another.

*Second*, Tata argues that no prejudice accrued because Plaintiffs failed to offer an adequate alternative, based on minor quibbles. AB-74-75. But it matters not whether Plaintiffs' proposed instructions were flawless (an issue that goes to preservation anyway). *Merrick*, 500 F.3d at 1017.

*Third*, Tata claims that the error was harmless because of supposed "flaws" with Plaintiffs' statistical evidence. However, this argument rests on credibility determinations which, as a disputed factual issue, "the prevailing party is not entitled to have … resolved in his favor" because it is impossible to know whether "the jury's verdict … resulted from a misapprehension of law rather than from factual determinations in [Tata's] favor." *Caballero v. City of Concord*, 956 F.2d

204, 207 (1992). Thus, these contentions cannot support the verdict below. *Id.*

The argument is not only improper, it is also mistaken. AB-25-28. (A) As Tata's own data shows, its U.S. workforce is only 24% non-Indian, but those employees account for 78% of terminations from the bench, resulting in a stark termination-rate disparity. OB-5, 13-14, 16; AB-28 (conceding this reflects Tata's data). These are the type of obvious disparities that can prove Plaintiffs' claims without expert analysis or conclusions. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977) (discrimination can be proved through a "clear pattern, unexplainable on grounds other than race"); *Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).

(B) Although Dr. Neumark did not consider the supposed reasons that employees became unallocated (AB-26-27) a defendant cannot invoke individual personnel decisions to explain away a clear pattern of differential treatment (OB-28)—that misapprehends the role of statistics in the *Teamsters* framework (OB-24-27). Moreover, Dr. Neumark did not "ch[oose] to ignore" or "limit[] the data." AB-26. The "reasons" came from Tata's termination files, which were excluded as

unreliable self-serving hearsay. FER-37-38 (order). Although Dr. Neumark testified that he had never seen the termination files (testimony that Tata mischaracterizes, AB-28-29) it was because Tata waited until after the close of expert discovery to produce them. FER-81 (expert deadline May 15, 2018); FER-39-78 (listing termination-file production dates)).

(C) Tata's alternative explanations are also flawed. Contrary to its executives' testimony (AB-14, 28) the only deputation agreement that Tata actually introduced obliges *expats* to return to India at the conclusion of their deputation to train other employees. FER-89. It does not impose any reciprocal obligation on Tata. This disputed fact cannot support the verdict.

(D) Dr. Lazear's testimony (AB 28-29), amplified the prejudice, rather than reducing it. His conclusions rested on the false premise that to commit intentional discrimination a company must set out to discriminate against a protected class and then devise a way to do so. ER-181:1442, *ll*.20-25. This was not required. *EEOC v. Inland Marine Indus.*, 729 F.2d 1229, 1235 (9th Cir. 1984) (holding that Title VII does not require "a 'scheme or plan'" to discriminate). Moreover, Tata's low

overall termination rate does not explain the basic fact that when Tata fires someone, it always selects a non-Indian employee. *See EEOC v. Gen. Tel. Co.*, 885 F.2d 575, 583 (9th Cir. 1989) (explaining that inter-company comparisons do little to explain intra-company disparate treatment).

(E) Tata's other rebuttal evidence consisted almost entirely of perfunctory non-discrimination policies and self-serving testimony from current employees (AB-75 (citing Stmt. §III)), which, when properly weighed, are insufficient to dispel the inference of discrimination that arises from statistical disparities because the result bespeaks discrimination. OB-28 (collecting cases); *see also Sims v. Georgia*, 389 U.S. 404, 407-08 (1967).

(F) Tata raises a host of other minor disputes, urging the court to re-weigh every fact in the case. That only goes to show that this case should be remanded for a new trial where a jury can re-weigh the evidence itself. *See United States v. Ciesiolka*, 614 F.3d 347, 354-55 (7th Cir. 2010) (in harmless error review, courts should be wary of "usurping the function of the jury"); *cf. United States v. Velarde-Gomez*, 269 F.3d 1023, 1036 (9th Cir. 2001) (en banc) ("[l]onger jury deliberations weigh

against a finding of harmless error because lengthy deliberations suggest a difficult case.").

*Fourth*, Tata claims that its lack of an economic motive to discriminate provides a rational basis for the verdict. AB-75-76. Not so. (A) The argument cannot be squared with the law because Plaintiffs were not required to prove "motive," only intent—when an employer treats its employees differently on the basis of race, its subjective reasons for doing so are immaterial. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 668-89 (1987) (holding that defendant did not "[have] any racial animus against or denigrate[] blacks generally" but "intentionally discriminated" by treating them differently). (B) It is also logically flawed because (like much discrimination) Tata's "motive" was a preference for Indian employees. OB-10-11. Such discrimination is always misaligned with an employer's economic interest because it prevents employees from being evaluated on merit. *See L.A. Dep't of Water & Power v. Manhart*, 435 U.S. 702, 712 (1978) ("classify[ing] employees" by protected trait inhibits "thoughtful scrutiny of individuals").

***Furthermore***, Tata's third and fourth arguments are based almost entirely on the trial court's decision denying Plaintiffs' request for a new trial based on the weight of the evidence. AB-75-76. That order is not on appeal (OB-3-4 (listing issues)) and necessarily applied the wrong legal standard (OB-34-38 (explaining mistake)). The order also lacks persuasive weight. Harmless error review "is more stringent than review for sufficiency of the evidence," *Caballero*, 956 F.2d at 206-07, and the burden was on Plaintiffs before, but now lies with Tata.

And, in any event, the decision was analytically flawed, listing evidence but failing to measure it against any law (SER-3-8) or to consider (even dismissively) the counter-arguments that Plaintiffs raised in reply. *Compare, e.g.*, FER-13-14 (explaining that economic motive not required), *with* SER-8 (ignoring point). This was because the decision was largely cribbed from a proposed order submitted with Tata's opposition, instead of reflecting the court's own analysis. *Compare* SER-3-8, *with* FER-25-31.

Because Tata cannot show that the verdict would more likely have been the same, a new trial is required.

24

### C. The Erroneous Citizenship Instruction Requires a New Trial

The district court's citizenship instruction was both erroneous and prejudicial and Tata's arguments to the contrary are misplaced.

#### i. *Tata's Misplaced Attempts to Explain Away the Error*

Tata does not refute Plaintiffs' recitation of the law (OB-43), instead claiming that the instruction "left room for the jury to infer some residual relevance to citizenship evidence" (AB-77-78). But that is not enough because the instruction failed to convey that the concepts overlap. OB-43; Ontiveros Amicus Brief. The lack of additional guidance "rendered the instruction incomplete and misleading." *Norwood*, 591 F.3d at 1067; *Hunter*, 652 F.3d at 1235. It was in error.

#### ii. *Tata Fails to Show the Error Was Harmless*

Tata bears the burden to show that the verdict would have been the same absent error. OB-30. However, the Answering Brief only argues that the instruction correctly guided the jury's consideration of the evidence (a separate issue). AB-78. This does not meet Tata's burden, so if the instruction was in error, a new trial is required.

Moreover, Tata's arguments are misplaced. First, Tata claims that the instruction did not limit the jury's consideration of the citizenship-

25

correlated evidence because it "does not discuss types of evidence at all." AB-78. That point rings hollow. All jury instructions necessarily guide jurors' consideration of trial evidence—that is their purpose. *United States v. Kaplan*, 554 F.2d 958, 969 (9th Cir. 1977) (jury instructions "provide[] the jury with adequate guidance to consider evidence relating to the [claim]'")). Here, the instruction drew a bald distinction, which jurors applied when interpreting the evidence.

Second, Tata claims that instructing jurors to "base [a] decision on all of the evidence" obviates any error in explaining the substantive law. AB-78. But that told jurors nothing about the overlap and "[w]ithout instructions as to the law, the jury becomes mired in a factual morass, unable to draw the appropriate legal conclusions based on those facts." *United States v. Lewis*, 53 F.3d 29, 34 (4th Cir. 1995).

Rather, the erroneous instruction would have led jurors to overlook or improperly minimize Plaintiffs' citizenship-correlated evidence. OB-44-45. Accordingly, a new trial is required.

## II. THE DESI EMAILS' EXCLUSION WAS PRESERVED AND REQUIRES A NEW TRIAL

The Answering Brief acknowledges the desi emails' discriminatory nature (AB-80-81)[7] but argues that their exclusion is not reversible error (AB-80-90). Contrary to Tata's contentions, the emails' exclusion was appropriately preserved, was erroneous, and was not harmless (which Tata bears the burden to prove).

### A. In Context, the Desi Emails Were Thoroughly Explored and Definitively Ruled Upon, Preserving the Error

Tata mistakenly contends that the issue was not preserved. AB-80-82. "A pretrial motion in limine" preserves an issue for appeal "if the substance of the objection has been thoroughly explored … and the district court's ruling permitting introduction of evidence was explicit and definitive." *United States v. Taylor*, 715 F. App'x 740, 740 (9th Cir. 2018) (citation omitted).

---

[7] Tata highlights that it had a reason to prefer Indian employees but, whatever their reason, it remained illegal discrimination. *Goodman*, 482 U.S. at 668-89.

Tata claims that the district court never issued the disputed ruling and that, in any event, Plaintiffs should have argued below that these emails concern "staffing" rather than hiring (and so they were not excluded by the order). AB-80-82. This argument impermissibly ignores the context of the dispute. *United States v. Palmer*, 3 F.3d 300, 304 (9th Cir. 1993) (holding that courts should read record in context).

Prior to trial, Tata filed its Motion in Limine No. 9, which sought to exclude three categories of evidence, discrimination: (1) in hiring, (2) against non-parties, and (3) against other groups, on unspecified grounds. ER-655, 657, 658. Section 1 specifically discussed and quoted the desi emails (ER-657), as did Plaintiffs' Opposition, which argued that they "reflect an express preference for *staffing* a particular U.S. position with a South Asian [or Desi] locally hired candidate" and "[t]hese comments were all made in the context of *staffing* open positions on client projects in the U.S.—the process at the heart of Plaintiffs' case—and concern a highly specific discriminatory preference for South Asians and Indians." ER-650-51 (emphasis added).

Later, the parties orally debated the issue (ER-21-23; AB-81) and Plaintiffs made two arguments regarding the "hiring evidence" as a

28

whole: (a) that the desi emails *do "relate to hiring"* but that they were also relevant to other issues in dispute (ER-23); and (b) that some other documents from Tata's Motion do not "*relate to hiring*" at all (ER-22).[8]

*Immediately after this*, the district court ruled: "I'm going to grant it as to evidence regarding hiring; deny it as to everything else … [s]o my ruling is that if it *relates to hiring*, it's out." ER-23 (emphasis added); *see also* ER-28 (order in limine, repeating the "relates to hiring" terminology). This definitively resolved issue (a), the desi emails, against Plaintiffs, so there was no need to renew the argument. Fed.R.Evid. 103(b); *United States v. McElmurry*, 776 F.3d 1061, 1067 (9th Cir. 2015).

The district court's reserved ruling on "how much of this [evidence] is hiring and how much isn't" concerned issue (b), the other documents within the "binder and a half" that did not "relate to hiring" at all. ER-23, 28. Contrary to Tata's acontextual reading of the exchange (AB-81-82), it was not an invitation to re-litigate the

---

[8] *See also* ER-652, *ll.*3-9 (Plaintiffs' opposition in limine, arguing that Tata "appears to misapprehend the significance of [some] documents" in the binder).

admissibility of the desi emails, which had already been argued and excluded.

And Plaintiffs cannot be faulted for failing to lodge an "offer of proof," (AB-82) which is "'meant to give the trial judge contemporaneous knowledge about the proposed evidence, so that the judge can make a proper ruling.'" *United States v. Boulware*, 558 F.3d 971, 975 (9th Cir. 2009) (citation omitted). Here, the emails were provided to the district court (ER-263-290), were specifically discussed in both parties' briefing (ER-650-51 (Plaintiffs')); ER-655-66 (Tata's)) and were debated orally. ER-21-23 (oral argument). No separate offer of proof is required because the "substance was apparent from the context." Fed.R.Evid. 103(a)(2). Accordingly, the issue was preserved for appeal.

## B. The Emails Were Relevant Under Applicable Law

The emails were relevant and Tata's arguments to the contrary are misplaced. AB-85-87. Brushing past the relevance and materiality case law cited in the Opening Brief (OB-52-62), Tata claims that the emails were inadmissible under *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). AB-85-86. This argument is fatally flawed. *Wal-Mart* does not establish rules of relevance or admissibility in class action

trials. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1048-49 (2016) ("*Wal-Mart* does not stand for the broad proposition that [evidence insufficient to support class certification] is an impermissible means of establishing classwide liability.").

Rather, ordinary evidentiary principles govern. *Id.* at 1046 (holding that admissibility "turns... on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action") (citing Fed.R.Evid. 401, 403). And so, the issue remains: did the emails tend to make any disputed issue more or less probable? Fed.R.Evid. 401. *Wal-Mart* does not answer this question either, it considered the sufficiency of certain evidence to create common questions under Rule 23(a)(2). 564 U.S. at 349.

For the same reasons, Tata's citation to the district court's denial of hiring-class certification is unavailing. AB-79-80. The order treated the emails as probative but ultimately insufficient to satisfy *Wal-Mart*'s commonality requirement. SER-39. Because the emails had some probative value, their sufficiency was a question for the jury, which the district court could not resolve. *Tyson Foods*, 136 S. Ct. at 1049 ("persuasiveness is, in general, a matter for the jury").

And, setting aside *Wal-Mart* itself, the core of Tata's argument is that the emails were irrelevant because there were too few to establish a nationwide intent to discriminate. AB-85-86. This proposition fails for two reasons. First, if anecdotal evidence can be excluded because it was isolated, there would be no anecdotal evidence in *Teamsters* trials at all, which is not the case. OB-27, 65-66; *see also Obrey v. Johnson*, 400 F.3d 691, 698-99 (9th Cir. 2005). Second, more fundamentally, the argument rests on the false premise that evidence is irrelevant if it cannot independently establish the Plaintiffs' claim. That is not the case. MCCORMICK ON EVIDENCE §185 & nn.29-37 (8th ed.) ("An item of evidence… need not prove conclusively the proposition for which it is offered... A brick is not a wall."). Even if the emails were not sufficient to prove the ultimate issue—that Tata maintains a nationwide pattern or practice of discrimination—they were relevant as a link in the chain. *See* OB-53-59 (explaining evidentiary value).

In sum, because the emails tended to prove disputed issues, they were relevant. OB-52-62. On these points, Tata has no defense. Accordingly, the district court abused its discretion

### C. The Emails Were Not Excludable Under Rule 403

#### i. *The Ruling Was Not Under Rule 403 and If It Were Review Is De Novo*

Under Rule 403, the emails could only be excluded if the court found their probative value was "substantially outweighed" by one of the concerns enumerated in Rule 403—"unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." When the district court fails to conduct a Rule 403 balancing on the record, review is de novo. OB-46 (quoting *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1008 (9th Cir. 2007)). While *citing* Rule 403 is not required; *applying* the Rule is (*id.*), a point Tata misses (AB-83).

Here the district court did not mention, let alone weigh, the Rule 403 concerns (OB-46-47) and Tata's contrary reading of the record strains credulity (AB-83-84). First, while the court noted that it would not review the binders to identify documents unrelated to hiring, it never weighed the volume of evidence contained within. *Supra*, pp.28-29 (explaining ruling in context). And the binders contained a substantial non-hiring evidence (*supra*, p.29), so they did not reflect the volume of hiring evidence at all. Second, the court's mention of

"probative value" suggests the ruling was under Rule 401, not 403. *See* McCORMICK ON EVIDENCE §185 ("[t]here are two components to relevan[ce]: materiality and probative value"). Accordingly, Rule 403 review (if any) is de novo.

### ii. *The Emails' Probative Value Was Not Substantially Outweighed*

In a meek effort to create some basis for the district court's ruling, Tata invokes undue delay and prejudice, neither of which carry water. AB-86-87.

First, Tata claims that the district court's observation about "a binder and a half" of evidence shows that the desi emails would have introduced undue delay. But that is based on the false premise that the binders reflected the volume of hiring evidence at issue. *Supra*, pp.29, 33. And the binders were not excluded—the only thing definitively ruled on were the desi emails, with the rest reserved for trial. *See supra*, p.29. So, the volume of evidence in the binders cannot justify their exclusion under Rule 403. Accordingly, the only issue is whether the excluded email chains would have caused some undue delay. They would not (and the district court never made any such finding).

Second, Tata briefly argues that these "seven emails" were unfairly prejudicial because they contradicted its antidiscrimination policy. AB-87. But evidence of employment discrimination is not unduly prejudicial in employment discrimination cases. OB-64 (explaining that unfairness stems from something "other than [the evidence's] persuasive weight"). Nor is evidence showing that an antidiscrimination policy was not followed. *Id.* And these emails are not as isolated acts, as Tata contends. *See Infra*, §II.D. Accordingly, the emails could not be excluded under Rule 403.

> ### D. Tata Fails to Carry Its Burden to Show Harmlessness.
>
> #### i. *Tata Bears the Burden of Showing Harmlessness Because* Shinseki *Did Not Overturn This Court's Harmless Error Jurisprudence*

Contrary to TCS's argument (AB-88-89), *Shinseki v. Sanders*, 556 U.S. 396 (2009) did not overrule this Court's harmless error rule (first announced in *Obrey v. Johnson*, 400 F.3d at 701). *See* OB-47.

*Shinseki* did not reject the harmless error rule announced in *Obrey*, it rejected a "complex, rigid, and mandatory" presumption of prejudice that applied no matter the type of notice defect or the

evidence that could have been marshalled in its absence. *Shinseki*, 556 U.S. at 407. As this Court has explained, *Shinseki* holds "that prejudice cannot be presumed from *any kind of error." McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) (emphasis added). It is only "[w]here harmfulness … is not apparent from the circumstances, [that] the party seeking reversal must explain how the error caused harm." *Id.* As *Shinseki* recognizes (in dicta), for orders excluding favorable evidence, the harm is apparent from the circumstances. 556 U.S. at 410 ("[for] ruling[s] excluding favorable evidence … circumstances … will make clear … that the ruling, if erroneous, was harmful and nothing further need be said").

None of Tata's post-*Shinseki* cases are contrary. AB-88. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (2012) was a social security appeal, to which the *Shinseki* rule applies. *See McLeod*, 640 F.3d at 887 ("[*Shinseki*] applies to Social Security cases as well as VA cases."). And *Crowley v. EpiCept Corp.*, 883 F.3d 739, 752 (9th Cir. 2018) simply recognizes that for generic "evidentiary rulings," a "showing of prejudice is required for reversal." Finally, *Boyd v. City & County of San Francisco*, 576 F.3d 938, 943 (9th Cir. 2009) simply quotes a case from

2003, a time when this Court inconsistently applied its harmless error rule. *Obrey*, 400 F.3d at 699-700 (noting and resoling conflict).

Thus, after *Shinseki* it remains the beneficiary's burden to overcome the presumption of harm when evidence is errantly excluded. *See, e.g.*, *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 464-65 (9th Cir. 2014) (en banc); *Jules Jordan Video Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1159 (9th Cir. 2010).

### ii.     *Tata Fails to Sustain Its Burden*

Tata does not and cannot demonstrate harmlessness. AB-89. First, Tata relies on the emails' supposedly negligible probative value, based on its arguments under Rules 401 and 403. AB-89. Those arguments are unavailing. *Supra*, §II.B-C; OB-52-63.

And the number of emails does not deprive them of probative value, as they were simply express examples of Tata's often-unspoken project-staffing discrimination. *See* OB-61 & n.15 (citing authority explaining that "'most [people] are circumspect enough to avoid making overtly discriminatory statements'"); *see also* ER-275 (advising requestor that future conversations about obtaining desi candidates should be by phone and that "obviously we cannot release this sort of

info to the outside world"); ER-281 (desi email prefacing request with "I don't know how to ask this subtly.. [sic]"). Tata's unspoken discrimination can be seen in its 76% Indian workforce and termination-rate disparities. OB 13-14. So, the emails would have accomplished exactly what *Teamsters* envisions—bringing "the cold numbers convincingly to life." 431 U.S. at 339.

Furthermore, these emails do not reflect the anomalous acts of a bad apple. AB-80-81. The fact that many (although not all) emails involve Brian Galicki is attributable to the realities of modern class action discovery. Plaintiffs did not have access to *all* of Tata's emails, rather the parties selected a mere fifteen document custodians, of which Galicki was one. FER-83. And Galicki, who worked for Tata's centralized nationwide HR department (OB-6-7 (explaining HR structure)), was simply a conduit for discriminatory requests from other Tata employees (*see* OB-48-51 (emails)).

Second, Tata claims that its *own* local-hiring evidence was sporadic and that Plaintiffs failed to object. AB-89 (discussing OB-67). But hiring was discussed during direct testimony from Tata's top executives, and Tata itself made the issue prominent to jurors by

highlighting it in closing. OB-67. Moreover, Plaintiffs argued *in limine* about their importance to rebutting Tata's defenses, but the trial court was unmoved (ER-651 (Pls.' MIL Opp'n)).

Third, Tata's supposed "mountain of evidence" consists entirely of self-serving documents and statements about Tata's commitment to diversity. AB-89. The jury was not required to credit these representations, which Tata's actual conduct tended to contradict. And the jury deliberated for two days, showing this was not a clear-cut case.

Moreover, "relying on the weight of the evidence alone to determine harmless error may involve … usurping the function of the jury." *United States v. Ciesiolka*, 614 F.3d 347, 354 (7th Cir. 2010). Particularly here, because evaluating discriminatory intent requires consideration of the whole picture. Accordingly, a jury should be provided with the opportunity to re-evaluate the case based on the full record, during a new trial.

## CONCLUSION

The district court's judgment should be vacated and the case remanded for a new trial.

Date: July 10, 2020

KOTCHEN & LOW LLP

*/s/Daniel Low*
Daniel Low
Daniel Kotchen
Amy M. Roller

*Attorneys for Appellants Slaight,
Masoudi, and Mandili*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Circuit Rule 32-1(b) because this brief contains 6,993 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared in Microsoft Word using 14-point Century Schoolbook, a proportionally spaced typeface.


Date: July 10, 2020

KOTCHEN & LOW LLP

*/s/Daniel Kotchen*
Daniel Kotchen

*Attorney for Plaintiffs-Appellants*
*Slaight, Masoudi, and Mandili*

# CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: July 10, 2020

KOTCHEN & LOW LLP

*/s/Daniel Kotchen*
Daniel Kotchen

*Attorney for Plaintiffs-Appellants*
*Slaight, Masoudi, and Mandili*